PRIBONIC and another, Respondents, vs. FULTON and another, Appellants.

*September 14—October 10, 1922.*

*Negligence: Fires: Failure to extinguish: Contributory negligence.*

1. An owner of property exposed to destruction by a fire known by him to exist is bound to make proper and timely efforts to extinguish the fire during the period in which it is subject to control, and if he fails to do so and his own property burns he is guilty of negligence proximately contributing to the damage.

2. Where plaintiffs, who were settlers in Northern Wisconsin, knew that a fire had been started on defendants' lands and appreciated the danger to their property in the event it spread, and also knew it was a period of drought, with a scarcity of water and other fires raging upon lands in the vicinity, they were guilty of contributory negligence in not taking any steps to extinguish the fire until the fourth day, when it had passed beyond their control.

· CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Bay-field county: G. N. RISJORD, Circuit Judge. *Reversed.*

The appeal is from a judgment in favor of the plaintiffs and against the defendants for $1,062.85 damages and costs.

The undisputed evidence in the case shows that the

plaintiffs were the owners of the southeast quarter of the southwest quarter of section 2, township 50 north, of range 4 west, and the defendant *La Fayette J. Fulton* was the owner of the southwest quarter of the southwest quarter of section 2, and the northwest quarter of the northwest quarter of section 11, of said township 50, all in the county of Bayfield, Wisconsin.   The following diagram, marked Exhibit A, indicates the location of the lands of the parties and of the various strips thereof referred to herein:

EXHIBIT A.

In the spring of 1920 the plaintiffs cleared for the defendant *La Fayette J. Fulton,* who resided at Minneapolis, that portion of the strip indicated by the number 6 on the

diagram, directly east of the orchard trees indicated by the
ciphers on such strip, and permitted the wood and brush so
cleared to remain thereon up to the time of the fire herein-
after referred to.    Subsequently they started clearing a
portion of the strips indicated on the diagram by the figures
2 and 4, and were still so engaged at the time of the fire.
The square on strip number 2 represents a barn belonging to
*Fulton,* and the two squares on plaintiffs' lands indicate
their house and barn.    Plaintiffs had a clearing on their
land about 400 feet long and 100 feet wide, and immedi-
ately to the west of their house and barn there was a clear-
ing of about fifty feet in width.

The defendant *Harry Fulton* is a son of the defendant
*La Fayette J. Fulton* and lives in the city of Bayfield, and
was employed by the defendant *La Fayette J. Fulton* to
cultivate his land, to employ help, and to attend to the
marketing.

The season of the year was exceptionally dry, and the
lands in question, on account of the dry brush thereon and
the stubbles in the field and other inflammable property,
created a situation favorable to a rapid spread of a fire
during the prevalence of high winds.

On the 3d of October, 1920, *Harry Fulton,* in company
with one Fred Marshall, visited the lands of the defendant
*La Fayette J. Fulton* and set fire to the brush upon the strip
indicated by number 6.    At that time a wind was blowing
from the northwest, which had a tendency to spread the
fire in a southeasterly direction and away from the plaint-
iffs' farm and buildings.    After setting the fire *Harry
Fulton* and Marshall called at the house of the plaintiffs and
discussed with them the fire, and the plaintiffs expressed
their fear that the fire might spread onto their premises and
destroy their buildings.    The fire continued to burn on
Sunday and during the night, and on Monday it spread onto
the forty acres of one Morris, directly south of the plaint-
iffs' land, and onto the land of one Selfour, located directly

south of the land of Morris.   The plaintiff *Matt Pribonic* testified that on the 5th and 6th of October he could have readily extinguished the fire, but failed to do so because he feared that the defendants would dock his pay.   On Tuesday, the 5th of October, while the fire was still burning, *Nick Pribonic* left his home to accept employment in a lumber camp located some distance from his farm, and did not return until after the fire.   On the morning of the 7th of October *Matt Pribonic* took his cows to a neighbor's farm to water them, and upon his return at about 10 o'clock a. m. of that day a high wind had set in from the west, and the fire was burning fiercely and rapidly approaching plaintiffs' farm and premises.   *Matt* immediately attempted to extinguish the fire, but, realizing that his efforts were in vain, attempted to secure help, and while on his way met the defendant *Harry Fulton,* who, realizing that the fire would shortly be communicated to the plaintiffs' buildings, advised returning to the premises in order to save as much of the stock and personal property as the limited time would permit.   Both *Matt Pribonic* and *Harry Fulton* thereupon did save a large portion of the stock and some of the personal property, but the fire communicated to the buildings and destroyed them.

The court submitted the case on a special verdict, and the jury found (1) that the defendant *Harry Fulton* set the fire which resulted in burning plaintiffs' property; (2) that he was guilty of a want of ordinary care in setting the fire; (3) that such negligence was the proximate cause of the damage; (4) that he negligently suffered such fire to escape onto plaintiffs' land, to the injury of plaintiffs' property; (5) that his negligence in permitting such fire to escape onto plaintiffs' land was the proximate cause of plaintiffs' damage; (6) that the plaintiffs did not fail to exercise ordinary care to prevent the fire from reaching their property.

*A. W. MacLeod* of Washburn, for the appellants.

For the respondents the cause was submitted on the brief of *Walsh & Morris* of Washburn.

DOERFLER, J.   The controlling question confronting this court for its determination is involved in the error assigned by defendants' counsel, in which he contends that at the close of the evidence the court should have directed a verdict in defendants' favor.   In considering this question let it be said that the verdict of the jury wherein it is found that the defendant *Harry Fulton* negligently set this fire and permitted it to escape upon plaintiffs' property, to their damage, and that such negligence constituted the proximate cause of such damage, is well supported by the evidence. Can it be held, however, as a matter of law, under the facts and circumstances as detailed in the above statement of facts, that the plaintiffs were also guilty of negligence which proximately contributed to the damage by failing to prop- erly and timely make efforts to extinguish the fire during the time when such fire was subject to control and extinc- tion on their part?

This question is no longer an open one in this state, and is ruled by the case of *Brunner v. M., St. P. & S. S. M. R. Co.* 155 Wis. 253, 143 N. W. 305, 144 N. W. 986, in which case, in the opinion of the court by Mr. Justice BARNES, it is held:

"As owner of the property exposed to destruction and knowing of the existence of the fire, he [the plaintiff] was bound to use all reasonable precautions to prevent its de- struction, and if he failed to perform the duty which the law enjoined on him in this regard, he was guilty of contributory negligence which in law precludes a recovery." *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223; *Mills v. C., M. & St. P. R. Co.* 76 Wis. 422, 45 N. W. 225; *Austin v. C., M. & St. P. R. Co.* 93 Wis. 496, 67 N. W. 1129; *Gibbons v. Wis. Valley R. Co.* 62 Wis. 546, 22 N. W. 533.

The plaintiffs had full knowledge of the starting of the fire on the afternoon of the 3d of October, and the evidence

clearly shows that they realized and appreciated the danger to their property in the event of the spread of the fire; in fact, *Matt Pribonic* in his testimony clearly expressed the thought that he entertained such apprehension at that time. There was no time during the interval between the setting of the fire and the early morning of the 7th of October that the same was not under the control of and subject to extinction by the plaintiffs. Not the slightest effort was made on their part to prevent the further spread of the fire or to extinguish the same until the fire had gone beyond their control. It is true that the possibility existed that had the plaintiffs abandoned their work for the defendants they might have subjected themselves to a deduction of wages on the latter's part. The defendant *La Fayette J. Fulton* during the entire period while the fire raged not only had no knowledge of the existence of the same but lived in the city of Minneapolis, far distant from the scene of the conflagration. *Harry Fulton* resided in the city of Bayfield and spent most of his time upon the lands of his father, *La Fayette J. Fulton,* located some distance from the plaintiffs' farm. During nearly all the time while the fire raged the same was under the observation and clearly within the view of the plaintiff *Matt Pribonic,* and during the entire time prior to October 5th was within the knowledge and the view of *Nick Pribonic.* No effort whatever was made to extinguish the fire until *Matt* returned to his land at about 10 o'clock on the morning of the 7th of October, at which time a heavy wind blew from the west, which so rapidly spread and fed the flames as to prevent any possibility of extinguishing the same with the help and the equipment which was then available.

Under the circumstances detailed, can it be said that the plaintiffs discharged the obligations imposed upon them by law, as required in the *Brunner Case, supra,* and did they use reasonable precaution to prevent the destruction of their property? This obligation is not merely a legal obligation

but is also a moral one. At or about the time of the fire a drought had prevailed for a considerable period of time in the locality where these lands were situated. There was a scarcity of water, and other fires were raging upon lands not far distant from those in question. Not only were their interests at stake but also the lives and limbs of settlers. The evidence clearly shows that while the plaintiffs fully appreciated this danger they took absolutely no steps whatsoever to prevent damage and injury until the fire had passed beyond their control.

We must therefore hold that the plaintiffs were guilty of negligence which proximately contributed to the damage, and under such holding we decide that the motion for a direction of a verdict should have been granted. Under the view taken by the court as above expressed, it becomes unnecessary to consider any of the other assignments of error of defendants' counsel.

*By the Court.*—Judgment of the court below is reversed, and the cause remanded with instructions to dismiss the complaint.

CROWNHART, J. (*dissenting*). Defendant *Harry Fulton* set a brush fire on defendants' premises at a time when it was very dry and the fire was likely to spread. Shortly thereafter he called at plaintiffs' place, and when plaintiffs remonstrated with him against his act he assured them that the fire would do no harm. For some days the fire spread and smoldered, but as the wind was in the opposite direction it did not endanger plaintiffs' premises. But the wind having suddenly raised and shifted, the fire became active and came suddenly down upon plaintiffs' land, destroying their buildings and other property.

Plaintiffs were evidently poor men of a class of foreigners who were trying, by great diligence, to hew out of a Northern wilderness a home. They were "baching" on their place. They had erected a log house, barn, pig pen,

and chicken coop, and had acquired some live stock. They had made a small clearing for themselves, and were eking out their substance by day labor, clearing land for defendants. These plaintiffs, whom the jury and trial court saw and heard testify, may well have been slow thinking and inclined to follow the direction and advice of their masters. They might well have hesitated to trespass on defendants' premises to put out a fire which defendant *Harry Fulton,* a man superintending two fruit farms, had set. *Harry Fulton* was their employer, to whom they had the right to look for advice with reference to clearing on defendants' place.

Now it is these poor men, simple and obedient workmen, who, by the majority decision of this court, are held to a higher degree of care than such workmen would ordinarily use, according to the verdict of the jury and the judgment of the able trial court.

They became the sufferers because of a fire for which the defendants were wholly responsible in the first instance. Plaintiffs stand all the loss resulting from defendants' negligence, for the reason that this court thinks, contrary to the jury and lower court, that they should have trespassed on defendants' premises and put out the fire, before danger became apparent, that *Harry Fulton* had set. To my mind that is too much to expect of men under the circumstances of plaintiffs.

It is a general rule requiring no citation of authority to support, that if there is any evidence or any reasonable inference to be drawn from the evidence to support a verdict of a jury, then it should not be disturbed.

The cases cited in the court's decision have little, if any, application to this case. They refer to fires set through defective railroad engines but through no design of defendants. In no case did the defendants exercise any control over the plaintiffs, or suggest to them that the fire would do no harm. In no case are the facts parallel to

those in this case.   At best they are hard cases, and the rule there established should not be extended.   To do so is for this court to assume the power rightly belonging to a jury to find the facts.

For the foregoing reasons I respectfully dissent from the majority opinion.